**Harold THOMAS et al., Petitioners,**

**v.**

**DISTRICT OF COLUMBIA BOARD OF APPEALS AND REVIEW,**
**Respondent.**

**No. 8970.**

District of Columbia Court of Appeals.

Argued April 16, 1975.

Decided April 13, 1976.

Rehearing and Rehearing En Banc Denied June 29, 1976.

John A. Hodges, with whom Edward E. Schwab, Washington, D. C., was on the brief, for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before KELLY, GALLAGHER and NEBEKER, Associate Judges.

NEBEKER, Associate Judge:

Petitioners are uninsured motorists whose drivers' licenses were suspended after they failed to comply with provisions of the Motor Vehicle Safety Responsibility Act (D.C.Code 1973, § 40–417, *et seq.*) by not posting security to cover possible liability from traffic accidents. The Department of Motor Vehicles (DMV) refused to hold hearings. Therefore, after suspension, petitioners sought review before respondent Board of Appeals and Review (the Board). The Board ordered DMV to hold hearings before impartial hearing examiners at which each petitioner could personally appear. The Board further ordered that each petitioner have the right to the presence of retained counsel and the right to cross-examine any witness appearing in person. The examiners' rulings are to be in writing and based only on evidence adduced and made a part of a record. Petitioners, being dissatisfied at not also obtaining (1) the right to confrontation and cross-examination of non-appearing witnesses who gave written statements, and (2) a shift of the burden of proof to the DMV, sought this review. There is a

threshold jurisdictional question. It is whether we have mandatory jurisdiction under the District of Columbia Administrative Procedure Act (hereinafter APA), D.C.Code 1973, § 1–1510 (a petition for review as a matter of right), or whether review is discretionary on an application for allowance of an appeal under D.C.Code 1973, § 40–420. We hold that our jurisdiction derives from § 40–420, and that in these so-called safety responsibility cases a hearing prior to suspension need not entail full confrontation and cross-examination; and that the burden of establishing existence of evidence supporting a reasonable possibility of the uninsureds' liability is on the DMV. We, therefore, grant the appeal under § 40–420 and affirm the order of the Board directing the DMV to conduct suspension hearings as ordered. On the burden question, misphrased in terms of "burden of proof", we hopefully clarify the nature of that issue and thus eliminate that friction.

## I. *Our Jurisdiction*

■ Prior to the effective date of the APA (October 21, 1969), § 40–420 provided that those in petitioners' situation may file in this court an application for an appeal from the adverse order. Neither the APA nor the District of Columbia Court Reform and Criminal Procedure Act of 1970[1] changed this method of seeking review. Indeed, while preserving discretionary review, Sec. 163(h) of the latter enactment repealed certain review mechanics of § 40–420 which related to the court's internal procedure for granting leave to appeal; a stay pending review; and our authority for determining granted appeals —the latter being redundant inasmuch as it was substantially the same as our authority under D.C.Code 1973, § 17–306 and § 1–1510. In view of this legislative fact, it cannot be said that discretionary review under § 40–420 has been repealed even by the unfavored rationale of implication.

Moreover, this court has already noted that a "specific mandate of Congress" is that we "have discretion whether to review adverse orders . . . under the Motor Vehicle Safety Responsibility Act", *Smith v. Murphy*, D.C.App., 294 A.2d 357, 360 (1972). We are, therefore, not required to accept this case on a § 1–1510 petition for review as matter of right from a contested case determination under the APA. As suggested by the respondent, we treat the petition for review as an application under § 40–420 and, as such, it is granted.

## II. *The Nature of the Hearing*

### (a) *Bell v. Burson*

The Motor Vehicle Safety Responsibility Act, D.C.Code 1973, § 40–437, provides that upon failure of persons like petitioners to post required security, the license of each driver shall be suspended. No provision for a hearing is made in the Act and none was provided by the DMV.

■ Prior to suspension under this Act, a hearing on the question whether there is a reasonable possibility of liability by the uninsured is required as a matter of due process. *Bell v. Burson*, 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). The issue is the nature of the hearing. In *Bell, supra*, the Supreme Court said that it is fundamental that when a State "seeks to terminate an interest such as [suspension of a driver's license under these circumstances], it must afford 'notice and opportunity for hearing appropriate to the nature of the case' *before* the termination becomes effective." *Id*. The Court specifically refrained from prescribing the extent of the hearing procedures respecting the two aspects now being urged. It deemed it "inappropriate" to do so as numerous alternatives were available under Georgia law. It is the first alternative which the Court deemed sufficient that we find significant.

■ The Georgia administrative procedure provided for a hearing where evi-

I. Pub.L. No. 91–358, 84 Stat. 473, July 29, 1970.

dence was limited to whether a driver or his vehicle was involved in an accident, and whether that driver had complied with the security requirements or was exempted from them. The Court said that an acceptable alternative would be "to include consideration of the question [of a reasonable possibility of liability] at the administrative hearing now provided". *Id.* at 542–43, 91 S.Ct. at 1591. That hearing did not provide for confrontation, cross-examination, or compulsory attendance. To be sure, subsequent de novo review proceedings may well have done so (*see Bell, supra,* 402 U.S. at 538 n. 3, 91 S.Ct. at 1586), but, notwithstanding, the Court also was careful to point out (*id.* at 540, 91 S.Ct. at 1590):

> Clearly, . . . the inquiry into fault or liability requisite to afford the licensee due process need not take the form of a full adjudication of the question of liability. That adjudication can only be made in litigation between the parties involved in the accident. . . .

While an inquiry into fault or liability may be viewed as different from an inquiry into reasonable possibility of such, the difference is in degree only. There lies the distinction. The more absolute and final the determination, the greater the procedural protections must be. Thus, procedure which is "appropriate to the nature of the case" of a possibility of liability is far less than for final adjudication of that issue.

This conclusion is compelled when a comparison is made with the criminal law. It has been held recently that one accused by information may not be restrained of liberty before trial absent a due-process-required probable cause determination. That determination, like the one here, "does not require the fine resolution of conflicting

evidence that a reasonable-doubt or even a preponderance standard demands, [because] credibility determinations are seldom crucial in deciding whether the evidence supports a reasonable belief in guilt." *Gerstein v. Pugh,* 420 U.S. 103, 121, 95 S.Ct. 854, 867, 43 L.Ed.2d 54 (1975). This rationale applies with greater force to a proceeding to determine *reasonable possibility of liability. See also Orr v. Superior Court of the City and County of San Francisco,* 71 Cal.2d 220, 77 Cal.Rptr. 816, 454 P.2d 712, 716–17 (1969), *overruled in part* in *Rios v. Cozens,* 7 Cal.3d 792, 103 Cal.Rptr. 299, 499 P.2d 979 (1972).

(b) *Applicability of the APA "Contested Case Standard"*

■ Our dissenting colleague takes the view that *Quick v. Department of Motor Vehicles,* D.C.App., 331 A.2d 319 (1975), compels the conclusion that a hearing in this case must be of the full adjudicatory or trial type. We have held such to be the kind of a proceeding contemplated for a "contested case" under the APA, D.C.Code 1973, §§ 1–1502(8) [2] and 1–1509. *See Chevy Chase Citizens Association v. District of Columbia Council,* D.C.App., 327 A.2d 310, 314 (1974). Since, as we have observed, neither the Safety Responsibility Act nor the Constitution (*Bell v. Burson, supra*) requires confrontation and cross-examination together with compulsory attendance of witnesses in these kinds of suspension hearings, the general rule of the *Chevy Chase* case is inapplicable. The *Quick* case did not deal with a conditional suspension of driving privileges based on a reasonable possibility of liability. It dealt with a final revocation for a traffic infraction after acquittal for the same charge. *But see Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). As to that kind of issue, we held that contested case procedures were re-

---

2. The pertinent part of D.C.Code 1973, § 1–1502(8), provides:

> [T]he term "contested case" means a proceeding before . . . any agency in which the legal rights, duties, or privileges

of specific parties are required by any law (other than this chapter), or by constitutional right, to be determined after a hearing before . . . an agency . . . .

quired. We think *Quick* is quite a different case for here the issue is far from "who did what, where, when, how [and] why . . ." (*i. e.,* a factual case of the kind that juries try). *Dupont Circle Citizens Association v. District of Columbia Zoning Commission,* D.C.App., 343 A.2d 296, 300 (1975), quoting 1 K. Davis, Administrative Law § 7.02 at 413 (1958). No facts are finally decided. What is decided is whether there is evidence in existence which could be believed and on which a reasonable possibility of liability can be predicated. *See Bell v. Burson supra;* and *Orr v. Superior Court of the City and County of San Francisco, supra.* Accordingly, we hold that in Motor Vehicle Safety Responsibility Act proceedings, the type of hearing required by *Bell v. Burson, supra,* does not include the right to compel attendance of witnesses for cross-examination.

### III. *The Question of Burden*

■ Petitioners contend that the APA (D.C.Code 1973, § 1–1509(b)) and due process requirements place the burden of proof (*i. e.,* showing their possible liability) upon the DMV. Section 1–1509(b) does place the burden of proof on the proponent of a rule or order in a "contested case". Since we have held that these suspension proceedings are not contested cases, we turn to the broader issue. Petitioners correctly observe that in *Bell v. Burson, supra,* the issue for the administrator is "whether there is a reasonable possibility of a judgment" against the uninsured. 402 U.S. at 542, 91 S.Ct. at 1591. This does cast the issue in the affirmative as to burden rather than in the negative by an assumption of possible liability to be upset by the uninsured motorist.

The respondent says, however, that the facts respecting the issue are peculiarly within the petitioners' knowledge and thus no undue hardship is thrust upon them. This is incorrect for two reasons. First, facts respecting fault are not always peculiarly known to the uninsured. Each side will have a version of what happened and why and the uninsured may not know an antagonist's factual basis for a cause of action. Moreover, under the Act, D.C. Code 1973, § 40–426, in multi-vehicle accident cases, all drivers are required to file an accident report. Police investigative reports are also available to the DMV. Second, under the Act, D.C.Code 1973, § 40–432, the security deposit requirement applies not just to drivers, but also to owners of accident vehicles. A non-driving owner may well have no knowledge by which to negate possible liability. We hold that to the extent there is a burden in these cases, it rests on the DMV. *Bell v. Burson, supra.* However, as we have said, the issue is not a determination of fact respecting fault. It is a determination whether there is evidence (together with permissible inferences) which, if believed, could by a reasonable possibility form a predicate for liability of the uninsured. The burden is not one of proof but one of ascertaining the existence of evidence sufficient for the test of reasonably possible liability. From what we have said, we are confident that on remand to the DMV for hearings, it will be able to accommodate itself to such· an affirmative task without difficulty. Of course, if a petitioner seeks to present evidence negating his possible liability, the hearing officer should ordinarily receive and consider it.

The order of the Board as modified by Part III of this opinion is affirmed and we remand for enforcement of the order in a manner not inconsistent with this opinion.

*So ordered.*

KELLY, Associate Judge (dissenting):

The majority correctly states that before suspending the license of an uninsured motorist who has failed to post security, the District is required by constitutional due process to afford that motorist a hearing. This hearing requirement was set down by

**794**

the Supreme Court in *Bell v. Burson,* 402 U.S. 535, 539, 91 S.Ct. 1586, 1589, 29 L. Ed.2d 90 (1971):

> Once licenses· are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the [Fifth] Amendment. . . . [Citations omitted.]

Given this constitutional right to a hearing, which we all recognize, I differ from the majority only on the nature of the hearing that is required. For if a hearing is constitutionally compelled, it is by definition a contested case under the District of Columbia Administrative Procedure Act:[1]

> [T]he term "contested case" means a proceeding before . . . any agency in which the legal rights, duties, or privileges of specific parties are required by any law (other than this chapter), *or by constitutional right,* to be determined after a hearing before . . . an agency . . .. [Emphasis added.][2]

In *Quick v. Department of Motor Vehicles,* D.C.App., 331 A.2d 319, 321 (1975), this court, in determining the precise nature of the hearing required before suspending the license of a drunken driver pursuant to D. C. Code 1973, § 40–302, stated:

> Because the privilege of petitioner (a "specific party") to drive was placed in issue by the order to show cause why his license should not be suspended and because procedural due process requires that a hearing be held prior to permanent suspension, *see Bell v. Burson,* 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), the revocation proceeding is a· "contested case" and is controlled by the District of Columbia Administrative

Procedure Act (DCAPA), D.C.Code 1973, § 1–1501 et seq. . . . [Footnote omitted.]

I perceive no distinction between *Quick* and this case for both involve suspending the driving privileges of specific parties. Nor, in my judgment, can a distinction be created by characterizing the suspension in *Quick* as a "final revocation" and a suspension for inability to post security as "conditional". Accordingly, I respectfully dissent.