**Albert RICHARDS, Petitioner,**

v.

**DISTRICT OF COLUMBIA HACKERS' LICENSE APPEAL BOARD, Respondent.**

**No. 9578.**

District of Columbia Court of Appeals.

Argued March 9, 1976.

Decided May 19, 1976.

Patricia B. Nemore, Washington, D. C., with whom Edward M. Basile, Washington, D. C., was on the brief, for petitioner.

S. Perry Jones, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the brief was filed, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before REILLY, Chief Judge, and KERN and HARRIS, Associate Judges.

REILLY, Chief Judge:

This case is before us on review of a decision [1] of the Hackers' License Appeal Board affirming the denial of a taxicab driver's license to petitioner on the ground of ineligibility under the Motor Vehicle Regulations. Insofar as pertinent, such Regulations provide: [2]

Section 10.202—GOOD MORAL CHARACTER: MINIMUM STANDARDS. An applicant shall not be considered of good moral character if—

. . . . . .

(b) He is on *parole or probation* at the *time of the filing* of his application for a license, except that if such parole or probation arose out of a conviction for a crime other than those listed in subsection (c) of this section, his application may be considered for approval by the Director if a letter from the appropriate parole or probation officer is submitted with the application stating that there is no objection to the issuance of a hacker's license.

(c) He has, within the three years immediately preceding the filing of his application been convicted of, or during such period has served any part of a sentence for, or is currently under indictment for the commission or an attempt to commit any of the following:
(1) murder, manslaughter, mayhem, malicious disfiguring of another, abduc-

tion, kidnapping, burglary, housebreaking, robbery, or larceny; . . . (Emphasis supplied.)

Petitioner was arrested in July of 1971, charged with armed burglary, robbery and assault, and was released on personal recognizance. After accepting a guilty plea on June 10, 1972, to the lesser offense of robbery, the court sentenced petitioner on August 11, 1972 to a prison term, suspended execution of the sentence, and placed him on probation for two years. Petitioner successfully completed his probationary period and was released from court supervision in August 1974. On February 5, 1975, petitioner applied to the Department of Motor Vehicles for a hacker's identification license but was turned down, and subsequently notified that his criminal record precluded licensure under § 10.202 (c)(1) of the quoted regulations. Petitioner appealed to the Board and a hearing was held on April 8, 1975, at which testimony and letters supporting his good moral character were received. In a letter, dated May 2, 1975, the Board informed him that the action of the Department was unanimously sustained "in accordance with . . . Section 10.202(b) and (c)."

In considering the reasons upon which the Board acted, it is unclear to us whether reliance was placed solely upon § 10.202(c) or in part upon subsection (b). "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *Securities and Exchange Commission v. Chenery Corporation*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626, 633 (1942). "In either event the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained." *Id.* at 94, 63 S.Ct. at 462, 87 L.Ed. at 636.

1. The government concedes that this is a "contested" case under D.C.Code 1973, § 1–1509, 1–1510.

2. The current Motor Vehicle Regulations were enacted on June 30, 1972, as District of Columbia Council Regulation No. 72–13.

█ Plainly, any reliance on § 10.202 (b) was misplaced. This subsection excludes only persons on parole or probation at the time their application is filed and petitioner had completed his probation before filing his. Accordingly, the Board's affirmance of the rejection of the license could be sustained only under subsection (c) on the ground that the requisite three years since petitioner's conviction for robbery had not elapsed on the filing date of the application. His plea of guilty had been entered on June 10, 1972, so that the earliest date upon which he would have been eligible was June 10, 1975. Petitioner argues, however, that if the regulation is read—as it obviously must be—as excluding any convicted felon for a three-year period from the occupation of a taxi-cab driver, irrespective of evidence of rehabilitation and good character, such regulation is invalid as being overbroad under the principles enunciated in *Cleveland Board of Education v. La Fleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974), and *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). We are not impressed by this argument, as none of the authorities cited by petitioner hold that any statute or regulation which makes a recent felony conviction a definite classification for the denial of certain privileges is invalid per se. As the government points out, there is a rational interest in protecting members of the public from using taxicabs operated by individuals who have recently demonstrated a flagrant disregard for the persons and property of others.

█ In this state of the record, we are not called upon to decide this issue, however. When this case was argued here, we noted on that day that more than three years had run since the date of the conviction on which the license rejection was predicated, and sua sponte raised with counsel the question of whether the case is not moot, as the regulations did not appear to bar petitioner from filing a new application.

Counsel rejected this suggestion, the government contending that subsection (c) should be read as preventing the three-year period from beginning to run until an applicant had ceased to serve his sentence and that the word "sentence" embraced the entire period of probation. Under this interpretation, petitioner would not be eligible for a license until August 10, 1977—three years after he had been discharged from probation. This was not the position taken in the government's brief, however, as it refers to the challenged provision of the regulations as one that ". . . precluded favorable consideration of his application for licensure as a hacker on account of his conviction of robbery within three years immediately preceding his application." More significantly, this was not the interpretation which the Board placed on the regulation, for the Board member conducting the hearing stated for the record—and without contradiction by his colleagues—that petitioner could qualify by submitting a new application on June 10, 1975.

In our opinion, the latter construction of the regulation is the proper one, for in the context of subsection (c) the words ". . . or during such period has served any *part* of a sentence . . ." (emphasis supplied) seem to mean time spent in prison confinement. The word "sentence", to be sure, has a broader meaning than "imprisonment", for it embraces all the conditions which might be imposed by a sentencing judge, including the payment of a fine, treatment at a rehabilitation center, or compliance with the terms of probation. It is apparent, nevertheless, that a reading of § 10.202 as a whole compels the narrower construction because if the word "sentence" in subsection (c) encompasses the period of probation or parole, then subsection (b), which excludes only persons still on probation or parole, would be completely superfluous. Consequently, we deem this petition for review as mooted by the passage of time.

*Petition dismissed as moot.*