**DISTRICT OF COLUMBIA, et al., Appellants,**

v.

**Gerald N. DOUGLASS, Appellee.**

**No. 81–1007.**

District of Columbia Court of Appeals.

Argued June 15, 1982.

Decided Oct. 13, 1982.

---

Leo N. Gorman, Asst. Corp. Counsel, Washington, D.C., with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for appellants.

Robert E. Greenberg, Gaithersburg, Md., for appellee.

Before KERN, PRYOR, and BELSON, Associate Judges.

PRYOR, Associate Judge:

This is an action for declaratory and injunctive relief concerning appellee's application for a license to practice naturopathy[1] pursuant to the Healing Arts Practice Act, D.C.Code 1981, §§ 2–1301 et seq. The issue before us is whether the issuance or denial of a license to practice naturopathy is a "contested case," within the meaning of D.C.Code 1981, § 1–1502(8),[2] for which direct review may be had in this court. We hold that such a decision does constitute a contested case. However, appellee failed to appeal the denial of his license directly to this court within the statutorily prescribed time period and instead filed the instant action in the trial court. We conclude that that court lacked jurisdiction over this action and accordingly remand it for dismissal of the claims challenging the denial of appellee's license.

I

On August 14, 1978 appellee, Gerald N. Douglass, filed an application with the Commission on Licensure to Practice the Healing Art for a license to practice naturopathy in the District of Columbia. Appellee sought a license by endorsement and without examination, pursuant to D.C.Code 1981, § 2–1322, having received a degree of Doctor of Naturopathic Medicine from the National College of Naturopathic Medicine

---

1. The trial judge noted that BLACK'S LAW DICTIONARY (4th ed. 1968) defines naturopathy as "a system of treatment of disease emphasizing assistance to nature and sometimes including the use of various medicinal substances (as herbs, vitamins, and salts) and certain physical means (as manipulation and electrical treatment)."

2. D.C.Code 1981, § 1–1502(8) defines a contested case as a "proceeding before ... any agency in which the legal rights ... of specific parties are required by any law (other than this subchapter), or by constitutional right, to be determined after a hearing before ... an agency ...."

in Portland, Oregon, where he is duly licensed. On November 2, 1979, appellants[3] denied his application. By letter dated December 4, 1979, the Commission informed appellee of its denial of his license on the following grounds: (1) the examination of the Oregon Board of Naturopathic Examiners was not comparable to the federal licensing examination (FLEX); (2) Douglass lacked adequate professional education and training; and (3) Douglass lacked proof of one year of training in an acceptable hospital. On April 17, 1980, appellee filed the instant action for declaratory and injunctive relief, seeking among other things: (1) a declaration that the appellants' enforcement of the licensure provisions against him was null and void; (2) an injunction against enforcement of those provisions in a way that would deny him a license; and (3) an order that appellants promulgate regulations in accordance with the Healing Arts Practice Act. Appellants filed a motion to dismiss or, alternatively, for summary judgment, and appellee filed a cross-motion for summary judgment. On June 30, 1980, the trial judge granted summary judgment for appellee and ordered appellants to issue a temporary license to appellee and to reevaluate appellee's application for a regular license. Filing a motion for reconsideration, or in the alternative, a request for a stay of execution of the order pending appeal, appellants for the first time argued, *inter alia,* that the Commission's decision on licensing might have been a contested case for which direct review appropriately lay in this court, and that the trial judge accordingly lacked jurisdiction over the case. In denying the appellants' motion, the judge held that the Commission's action was not a "contested case." To support that conclusion, he found that: (1) the Healing Arts Practice Act did not entitle Douglass to a hearing on the license decision; (2) Douglass attacked the entire licensing system of the Commission and did not seek a personal claim for damages or licensure; and (3) this action concerned a "general policy of future applicability" and not a dispute bearing on particular parties and a particular situation.

## II

We first must determine whether the Commission's denial of Douglass' application was a "contested case" entitling him to direct review in this court pursuant to the District of Columbia Administrative Procedure Act (DCAPA), D.C.Code 1981, § 1–1510. For a proceeding to constitute a "contested case," a specific statute or the Constitution must entitle a person to a hearing concerning the legal rights of the parties. *See Capitol Hill Restoration Society, Inc. v. Moore,* D.C.App., 410 A.2d 184, 187 (1979); *Chevy Chase Citizens Association v. District of Columbia,* D.C.App., 327 A.2d 310, 313 (1974) (en banc). We have characterized a contested case as involving a "quasi-judicial process based upon particular facts and information, and immediately affecting the interests of specific parties in the proceeding." *Citizens Association of Georgetown, Inc. v. Washington,* D.C.App., 291 A.2d 699, 703 (1972); *see DeBruhl v. District of Columbia Hackers' License Appeal Board,* D.C.App., 384 A.2d 421, 425 (1978). However, a matter retains its status as a contested case even if there are no disputed "adjudicative facts" necessitating a hearing. *See id.*[4]

It is well-established that "the right to hold specific private employment and to follow a chosen profession free from unreasonable governmental interference comes within the 'liberty' and 'property' concepts" of the Due Process Clause of the Constitution. *Greene v. McElroy,* 360 U.S. 474, 492, 79 S.Ct. 1400, 1411, 3 L.Ed.2d 1377 (1959). *See Leis v. Flynt,* 439 U.S. 438, 452 n. 17, 99 S.Ct. 698, 706 n. 17, 58 L.Ed.2d 717 (1979) (Stevens, J., dissenting); *Willner v. Committee on Character and Fitness,* 373 U.S. 96, 102–03, 83 S.Ct. 1175, 1179–1180, 10 L.Ed.2d 224 (1963); *Schware v. Board of*

---

3. Appellants are the District of Columbia and the members of the D.C. Commission on Licensure to Practice the Healing Art in the District, who were sued in their official capacity.

4. Indeed, under the DCAPA "any contested case may be disposed of by stipulation, agreed settlement, consent order, or default." D.C. Code 1981, § 1–1509(a).

*Bar Examiners,* 353 U.S. 232, 238–39, 77 S.Ct. 752, 755–756, 1 L.Ed.2d 796 (1957); *Woods v. District of Columbia Nurses' Examining Board,* D.C.App., 436 A.2d 369, 382 (1981). Thus a party is entitled to some kind of hearing before denial of that right. *Woods v. District of Columbia Nurses' Examining Board, supra* at 372. Accordingly, we hold that Douglass had a liberty and property interest in obtaining a license sufficient to invoke the protection of the Due Process Clause, and consequently was constitutionally entitled to an inquiry in the nature of a hearing on his application for a license to practice naturopathy. Because of his constitutional right to a hearing and because of the nature of the naturopathy licensing process, which involved particular facts and information immediately affecting the interests of appellee, we conclude that appellee's license application was a "contested case" within the meaning of § 1–1502(8).

■ We turn now to the question of our jurisdiction to review this case. Had appellee directly sought review of the Commission's decision in this court pursuant to DCAPA § 1–1510 [5] within the statutorily prescribed time period,[6] we would no doubt have had jurisdiction over his petition for review. *See* D.C.Code 1981, § 1–1510; § 11–722; tit. 11 app. § 431. However, rather than do so, appellee filed the instant action for declaratory and injunctive relief in the trial court several months after the time period expired. Thus, we must consider whether our jurisdiction to review contested cases is exclusive, thereby precluding trial court jurisdiction.

Congressional intent underlying this court's review of agency decisions pursuant to DCAPA § 1–1510 has been interpreted normally to require exclusivity.[7] *See Cheek v. Washington,* 333 F.Supp. 481, 483 (D.D.C. 1971). In that case the federal district court dismissed a complaint for declaratory and injunctive relief after the D.C. Department of Motor Vehicles suspended plaintiff's driver's license. *Id.* at 484. The court held that his avenue of further relief was by petition for review in the District of Columbia Court of Appeals, and not in Federal District Court. *Id.* at 483. The court reasoned that Congress had prescribed a course of administrative adjudication pursuant to the DCAPA in an attempt (1) to expand a person's right of review of District of Columbia administrative actions; (2) to centralize that review; and (3) to eliminate the lack of uniformity resulting from multiple jurisdiction. *Id.* at 484. The court refused to thwart the congressional scheme establishing direct review in this court. *Id.*

In the analogous situation where a special review statute vests jurisdiction over federal administrative decisions in the court of appeals, courts have held that that jurisdiction is exclusive. *See, e.g., Whitney National Bank v. Bank of New Orleans & Trust Co.,* 379 U.S. 411, 419–23, 85 S.Ct. 551, 557–559, 13 L.Ed.2d 386 (1965); *Investment Co. Institute v. Board of Governors of the Federal Reserve System,* 179 U.S.App.D.C. 311, 320–21, 551 F.2d 1270, 1279–80 (1977); *Nader v. Volpe,* 151 U.S.App.D.C. 90, 95–96, 466 F.2d 261, 266–67 (1972); *First National Bank of Scotia v. United States,* 530 F.Supp. 162, 168 (D.D.C.1982). *See also* Note, *Jurisdiction to Review Federal Ad-*

---

**5.** D.C.Code 1981, § 1–1510 provides, in pertinent part: "[a]ny person ... adversely affected ... by an order ... of ... an agency in a contested case, is entitled to a judicial review thereof ... upon filing in the District of Columbia Court of Appeals a written petition for review.... A petition for review shall be filed in such Court within such time as such Court may by rule prescribe ...."

**6.** A person must file in this court his or her petition for review of an agency order or decision within 15 days of the date of formal notice

of that order or decision. *See* D.C.App.R. 15(b) and D.C.Code 1981, § 1–1510.

**7.** The legislative history makes clear that one of the key purposes of the DCAPA was to reform and systematize the channels of judicial review of administrative actions. Except where an existing statute specified another avenue of review, the Act provided for all review of administrative actions in contested cases to be in this court. *See* S.REP. No. 1581, 90th Cong., 2d Sess. 8–9 (1968); H.R.REP. No. 202, 90th Cong., 1st Sess. 3–4 (1967).

*ministrative Action: District Court or Court of Appeals,* 88 HARV.L.REV. 980, 982–83 (1975). Accordingly, we conclude that § 1–1510 provides for exclusive appellate review of administrative action in contested cases, and thereby precludes concurrent jurisdiction in the Superior Court. In this case, appellee sought and the trial court granted declaratory and injunctive relief concerning his specific license application. Thus, we find that the instant action constitutes a challenge to the Commission's denial of appellee's license application in the previous contested case.[8] Therefore, we hold that the Superior Court lacked jurisdiction to review the Commission's action and that accordingly we also lack jurisdiction to review the trial court decision.

*Remanded with instructions to dismiss.*

---

**8.** We note that appellee's third prayer for relief in his complaint—"mandate defendants to promulgate regulations in accordance with and consistent with the Act," is not before the court in this appeal. The trial court did not grant or deny appellee this relief, and neither party on appeal has raised the issue.